[No. E024743. Fourth Dist., Div. Two. May 23, 2000.]

WARREN T. FINLEY, as Trustee, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THIRD LAGUNA HILLS MUTUAL et al., Real Parties in Interest.

[No. E024843. Fourth Dist., Div. Two. May 23, 2000.]

WARREN T. FINLEY, as Trustee, etc., et al., Plaintiffs and Appellants, v.
THIRD LAGUNA HILLS MUTUAL et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III, IV, and VII.

**COUNSEL**

Payne & Fears, Daniel M. Livingston, Alan G. Ross; Albert, Weiland & Golden and Marcus M. Kaufman for Petitioners and for Plaintiffs and Appellants.

No appearance for Respondent Superior Court.

Hart, King & Coldren, William R. Hart and Robert J. Mulvihill for Defendants and Respondents and for Real Parties in Interest Third Laguna Hills Mutual, United Laguna Hills Mutual, Golden Rain Foundation of Laguna Hills, Earl Donaldson, Jim Etter, Tom Jorde, Robert Morton, Jan Nelson, Walter Penn, Marvin Taves, Cynthia Chyba, Robert Miller, Burns Nugent, Dick Osterlind, Bert Postill, Eleanore Schwartz, Ann Snider, Thomas Blaylock, Bettye Carlsten, Kenneth Dooley, Richard Fuchs, Phyllis Fish, Eloise Kight, Thomas E. McCauley, Leo Minkin, Richard Newsome, Robert Ring, Leroy Wolever, Juel Anderson, Irving Goldberg, Bert Hack, Matthew Magidson, Rhea Saylors, Bert Black, Seymour Coblens, Harry Curtis and Robert Payne.

Cassidy, Warner, Lane & Winstead, B. Kent Warner and David C. Olson for Defendant and Respondent and for Real Party in Interest Charles Hellman.

## OPINION

**RICHLI, J.**—Several related homeowners associations used homeowner-paid assessments to make contributions to a political action committee to support a local Orange County ballot measure. Plaintiffs, who are members of the homeowners associations, challenge these contributions as ultra vires, illegal, and in violation of their constitutional rights to free speech and association.

Plaintiffs have filed both a writ petition and an appeal. In the writ proceeding, we issued an alternative writ and consolidated the proceeding with the appeal. In the appeal, plaintiffs contend they were entitled to the issuance of a preliminary injunction. In the writ petition, plaintiffs contend they were entitled to entry of summary judgment in their favor; alternatively, they contend the trial court erred by bifurcating the trial of defendants' "special litigation committee" affirmative defense. We find no error. Thus, we will deny a writ and we will affirm.

### I

### FACTUAL BACKGROUND

United Laguna Hills Mutual (United), Third Laguna Hills Mutual (Third), and another association not a party to this action are the homeowners associations for different portions of Leisure World, a senior citizens community in Laguna Hills.

Golden Rain Foundation of Laguna Hills (Golden Rain) functions as a sort of master homeowners association. Each of the homeowners associations at Leisure World is a voting "corporation member" of Golden Rain; each of their respective homeowner members is a nonvoting "member" of Golden Rain. (We will refer to United, Third, and Golden Rain collectively as the Associations.) The Associations are nonprofit mutual benefit corporations.

Leisure World is near the El Toro Marine Corps Air Station. (The Thomas Guide: Orange County (1998 ed.) pp. 861, 891.) Proposals that this closed military base be converted into a commercial airport have generated considerable local controversy. Measure S, an initiative which would have impeded or prevented the airport conversion, qualified for the March 1996 Orange County ballot. Taxpayers for Responsible Planning—Yes on Measure S (Taxpayers) is a political action committee which—needless to say—supported Measure S.

Between January 1995 and January 1996, the Associations contributed a total of $542,361 to Taxpayers. This money came from assessments they had

collected from their homeowner members. Taxpayers used the money to support Measure S.

After this action was filed, each of the Associations formed its own special litigation committee. Each committee was made up of three members of the board of directors who had not become members until after this action had been filed. The committees retained separate legal counsel; in person or through counsel, they interviewed witnesses and reviewed all pleadings, motions, and discovery in this action. The special litigation committees all concluded that the prosecution of this action was not in the best interests of the Associations.

## II

### Procedural Background

The plaintiffs in this action are Warren T. Finley, as trustee of the James and Sylvia Henderson 1977 Trust; Donald H. Rez, as trustee of the Rez Family Trust; and Donald Firestone. Each of them allegedly is a member of one or more of the Associations.

The defendants are the Associations and certain members of their respective boards of directors who allegedly authorized the contributions (collectively, the Directors).[1]

Plaintiffs' complaint, as subsequently amended, was asserted derivatively, on behalf of the Associations. It alleged five causes of action against the Directors: (1) for recovery of the contributions, on the grounds that they (a) violated the Davis-Stirling Common Interest Development Act (Civ. Code, § 1350 et seq.), (b) violated the Associations' governing documents, (c) breached the Directors' fiduciary duties, (d) constituted a waste of corporate assets, and (e) were ultra vires; (2) for conversion; (3) for recovery of the contributions, on the grounds that they violated the constitutional rights of dissenting members of the Associations; (4) for injunctive relief; and (5) for violation of civil rights (42 U.S.C. § 1983).[2]

Defendants answered and asserted affirmative defenses, including the business judgment rule and that the action was not in the best interest of the Associations.

---

[1]Taxpayers and its treasurer, Jerard Warner, were also named as defendants, but they, and the causes of action against them, are not involved in this appeal.

[2]The fifth cause of action was essentially identical to the third cause of action, for violation of constitutional rights, with the addition of a claim for attorney's fees under 42 United States Code section 1988.

On December 30, 1998, plaintiffs filed motions for summary judgment; in the alternative, they sought summary adjudication on each cause of action and/or on defendants' business judgment rule defenses. Also on December 30, 1998, plaintiffs filed a motion for a preliminary injunction. Plaintiffs submitted the same evidence in support of, and defendants submitted the same evidence in opposition to, both motions.

On or about December 30, 1998, defendants filed a motion to bifurcate and try first their affirmative defense that the action could not be maintained derivatively because disinterested special litigation committees had determined that it was not in the best interest of the Associations.

On March 12, 1999, after hearing argument, the trial court denied plaintiffs' motions for summary judgment and a preliminary injunction. It granted defendants' motion to bifurcate.

On April 7, 1999, plaintiffs appealed from the order denying their motion for a preliminary injunction.

On April 14, 1999, plaintiffs filed a petition for writ of mandate, challenging the order denying their motions for summary judgment and the order granting defendants' motion to bifurcate.

### III, IV*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

### V

#### THE BUSINESS JUDGMENT RULE DEFENSE

Plaintiffs contend they were entitled to summary adjudication on defendants' business judgment rule defense.

■ Under the business judgment rule, a director cannot be held liable for actions taken in good faith which he or she believes, based on a reasonable investigation, to be in the best interests of the corporation. (Corp. Code, §§ 309 [General Corporation Law], 7231 [Nonprofit Mutual Benefit Corporation Law]; *Barnes v. State Farm Mut. Auto. Ins. Co.* (1993) 16 Cal.App.4th 365, 378-379 [20 Cal.Rptr.2d 87]; *Gaillard v. Natomas Co.* (1989) 208 Cal.App.3d 1250, 1263 [256 Cal.Rptr. 702].)

Plaintiffs argue the business judgment rule does not apply to actions which are ultra vires or illegal. In an unpublished portion of the opinion,

---

*See footnote, *ante*, page 1152.

however, we held that, on this record, the contributions were neither ultra vires nor illegal. Accordingly, even assuming, for purposes of argument, plaintiffs have correctly stated the law, they were not entitled to summary adjudication on this defense.

## VI

### THE SPECIAL LITIGATION COMMITTEE DEFENSE

Plaintiffs contend the trial court erred by bifurcating defendants' special litigation committee defense. They also contend—albeit tersely—it erred by failing to grant summary adjudication on this defense.

▮ Plaintiffs' primary argument is that a special litigation committee defense has not been recognized, and should not be recognized, in California. Plaintiffs waived this contention by failing to raise it below. As an alternative ground, however, and because this issue seems likely to loom large on remand, we hold that the special litigation committee defense is legally valid in California.[6]

A number of other states (or federal courts applying the law of other states) have recognized a special litigation committee defense. This defense arises out of the interplay between the business judgment rule and the requirement in a stockholder's derivative action that the plaintiff must have made a demand on the board of directors to have the corporation pursue the action. (See Corp. Code, § 800, subd. (b)(2).) Thus, it has been held that, once a duly appointed committee of disinterested directors reasonably determines that it is not in the best interests of the corporation to pursue the claims asserted in the derivative action, that decision is protected by the business judgment rule. The trial court must determine, as a matter of fact, whether the committee members were disinterested and whether they conducted an adequate investigation. If it answers yes to both questions, however, it must dismiss the derivative action. (*Roberts v. Alabama Power Co.* (Ala. 1981) 404 So.2d 629, 631-636; *Hirsch v. Jones Intercable, Inc.* (Colo. 1999) 984 P.2d 629, 636-638; *De Moya v. Fernandez* (Fla.Dist.Ct.App. 1990) 559 So.2d 644, 645-646; *Millsap v. American Family Corp.* (1993) 208 Ga.App. 230 [430 S.E.2d 385]; *Allied Ready Mix Co v. Allen* (Ky.Ct.App. 1998) 994 S.W.2d 4, 8-10; *Auerbach v. Bennett* (1979) 47 N.Y.2d 619,

---

[6]We are far from convinced that, in ruling on the motion to bifurcate, the trial court was required to consider the validity of the defense. If the defense was indeed invalid, however, it would be a waste of time and money to hold a separate trial on it. Thus, we may treat this issue as properly presented, including in the writ proceeding. (See *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 6-7 [74 Cal.Rptr.2d 248, 954 P.2d 511]; *Blue Cross of California v. Superior Court* (1998) 67 Cal.App.4th 42, 47-48 [78 Cal.Rptr.2d 779].)

630-631 [419 N.Y.S.2d 920, 393 N.E.2d 994, 1000]; *Miller v. Bargaheiser* (1990) 70 Ohio App.3d 702, 705-708 [591 N.E.2d 1339, 1341-1343]; *Cuker v. Mikalauskas* (1997) 547 Pa. 600, 611-614 [692 A.2d 1042, 1048-1049].)[7]

A minority of states have recognized a modified version of the special litigation committee defense. These states require the trial court to scrutinize the committee's decision independently; they vary as to the precise degree of scrutiny required. (*Joy v. North* (2d Cir. 1982) 692 F.2d 880, 887-891 [applying Connecticut law; trial court is to weigh likely recovery, discounted by the probability of liability, against the costs to the corporation of continuing the action], cert. den. *sub nom. Citytrust v. Joy* (1983) 460 U.S. 1051 [103 S.Ct. 1498, 75 L.Ed.2d 930];[8] *Zapata Corp. v. Maldonado* (Del. 1981) 430 A.2d 779, 787-789 [22 A.L.R.4th 1190] [trial court is to apply its own "independent business judgment"]; *Houle v. Low* (1990) 407 Mass. 810, 814-826 [556 N.E.2d 51, 53-60] [trial court must determine whether committee's decision was "reasonable and principled"]; *In re PSE & G Shareholder Lit.* (1998) 315 N.J.Super. 323, 335-336 [718 A.2d 254, 261] [trial court must determine whether committee's decision was "reasonable and principle[d]"]; *Alford v. Shaw* (1987) 320 N.C. 465, 468-474 [358 S.E.2d 323, 325-328] [trial court must consider totality of circumstances, including committee's report, in deciding whether directors' action was "just and reasonable"]; *Lewis v. Boyd* (Tenn.Ct.App. 1992) 838 S.W.2d 215, 222-226 [trial court must determine whether committee's decision was "reasonable and principled"].)

Iowa recognizes the defense but holds that, if the board has a majority of interested directors, it cannot make a valid delegation to a special litigation committee. In that event, the trial court may appoint a " 'special panel,' " which may determine whether the derivative action is in the best interest of the corporation. (*Miller v. Register and Tribune Syndicate, Inc.* (Iowa 1983) 336 N.W.2d 709, 718.) As far as we are aware, there is no court which has refused to recognize the defense at all.

A considerable number of states have codified the special litigation committee defense. (Alaska Stat. § 10.06.435, subd. (f) [independent scrutiny standard]; Ariz. Rev. Stat. Ann. § 10-3634; Conn. Gen. Stat. Ann. § 33-724; Fla. Stat. Ann. § 607.07401, subd. (3); Ga. Code Ann. §§ 14-2-744, 14-3-744; Idaho Code § 30-1-744; Me. Rev. Stat. Ann. tit. 13-A, § 632; Minn. Stat. Ann. § 302A.241; see also *Drilling v. Berman* (Minn.Ct.App.

---

[7]The vast bulk of these cases were decided in the 1990's. Plaintiffs' assertion that the special litigation committee defense "is apparently rarely used today, as evidenced by the paucity of reported decision on the subject since the late 1980's" is simply false.

[8]*Joy v. North* has since been overruled by statute. (Conn. Gen. Stat. Ann. § 33-724.)

1999) 589 N.W.2d 503, 506-507 [construing Minn. Stat. § 302A.241]; Miss. Code Ann. § 79-4-7.44; Mont. Code Ann., §§ 35-1-545, 35-2-1304; Neb. Rev. Stat. Ann. § 21-2074; N.H. Rev. Stat. § 293-A:7.44; N.C. Gen. Stat. § 55-7-44; Tex. Bus. Corp. Act Ann., art. 5.14, subds. F, H; Va. Code Ann., § 13.1-672.4; Wis. Stat. Ann. §§ 180.0744, 181.0744.)[9] Of these, all but the Alaska and Minnesota statutes are based on section 7.44 of the American Bar Association's 1984 Model Business Corporations Act, which adopts the original, unmodified version of the defense.

Plaintiffs claim the validity of the special litigation committee defense is an open question in California. The Ninth Circuit, however, has twice held that the California Supreme Court would recognize the defense. (*Gaines v. Haughton* (9th Cir. 1981) 645 F.2d 761, 770-772, cert. den. (1982) 454 U.S. 1145 [102 S.Ct. 1006, 71 L.Ed.2d 297]; *Lewis v. Anderson* (9th Cir. 1979) 615 F.2d 778, 782-783, cert. den. (1980) 449 U.S. 869 [101 S.Ct. 206, 66 L.Ed.2d 89].) ■ Decisions of the federal courts interpreting California law, although not binding on us, are persuasive. (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 299 [216 Cal.Rptr. 443, 702 P.2d 601].)

The only California decision concerning the defense is *Will v. Engebretson & Co.* (1989) 213 Cal.App.3d 1033 [261 Cal.Rptr. 868]. In *Will*, a stockholder's derivative action, the corporation filed a motion for summary judgment, asserting the special litigation committee defense. (*Id.*, at p. 1037.) The trial court ruled that there were triable issues of fact " 'as to the adequacy of the investigation [and] as to the good faith and the independence of the committee.' " (*Ibid.*) It proceeded, however, to treat the motion as a " 'hybrid dismissal' motion"; it held a " 'good faith' hearing," determined that the committee was independent and acted in good faith, and dismissed the action. (*Id.*, at p. 1038.)

The appellate court began by noting: "The business judgment rule has been held, among other things, to permit a corporation to appoint a special litigation committee to decide whether the maintenance of a shareholder's derivative suit is in the corporation's best interests. [Citation.] The committee may decide that the suit should be dismissed and, if it does, the corporation may make a motion in the trial court to dismiss the suit. It may demur, move for judgment on the pleadings, or seek summary judgment." (*Will v. Engebretson & Co., supra,* 213 Cal.App.3d at pp. 1040-1041, fn. omitted, citing *Lewis v. Anderson, supra,* 615 F.2d at p. 783.) "However, courts which have considered the issue have concluded that judicial review of the independence, good faith, and investigative techniques of a special

---

[9]Plaintiffs' assertion that the defense "appears to have been used only briefly in a few states" is, once again, false.

litigation committee is governed by traditional summary judgment standards." (*Will, supra,* at p. 1041.) The court concluded the trial court erred by holding a good faith hearing. Once the trial court denied the motion for summary judgment, the plaintiff was entitled to "a trial on the merits as opposed to a 'limited review' of the merits regarding the issue of the good faith and independence of the committee." (*Id.,* at p. 1043.)

The plaintiff had argued the trial court should have used the modified version of the defense, under which the trial court is required to apply its own "independent business judgment." (*Will v. Engebretson & Co., supra,* 213 Cal.App.3d at p. 1042, fn. 5, citing *Zapata Corp. v. Maldonado, supra,* 430 A.2d 779.) Because the appellate court reversed on procedural grounds, it specifically declined to decide whether it should follow the "two-step approach in *Zapata.*" (*Will, supra,* at pp. 1039, 1042, fn. 5.)

Plaintiffs read *Will* as declining to decide whether the special litigation committee defense is valid. We disagree. *Will* cited *Lewis* as holding that the defense is valid. It then held that the procedural vehicles for asserting the defense include a motion for summary judgment or a full trial, but not a good faith hearing. This implicitly but necessarily means the defense may in fact be asserted. What the *Will* court did decline to decide was which *version* of the defense may be asserted—the majority (and Model Act) "one-step" version, in which the court decides only whether the committee was disinterested, acted in good faith, and investigated adequately, or the minority "two-step" version, in which the court must additionally apply its own business judgment. Under *Will,* however, the special litigation committee defense, in some form, is valid in California.

Plaintiffs argue there is no reported case in which the special litigation committee defense has been used by a homeowners association. They fail to explain, however, why it could not be. ▆ Here, each of the Associations was incorporated as a nonprofit mutual benefit corporation. Thus, basic principles of corporate law apply to them. Such principles specifically include the business judgment rule (Corp. Code, §§ 309, 7231) as well as the principle that the directors may delegate their authority to a committee (Corp. Code, §§ 300, subd. (a), 311, 7210, 7212, subd. (a)).

Plaintiffs also assert that the special litigation committee defense "cannot be . . . used to exculpate directors from liability for *ultra vires,* illegal or unconstitutional acts." As we have already held, plaintiffs were not entitled to summary adjudication of their claim that the contributions were ultra vires or illegal. But more to the point, plaintiffs appear to be confusing two distinct exercises of business judgment. First, defendants invoke the business

judgment rule to protect their decision to make the contributions. We may assume, without deciding, the business judgment rule would not apply to this decision if the contributions were ultra vires or illegal. Second, defendants invoke the business judgment rule to protect the special litigation committees' decision that this derivative action is not in the best interest of the Associations. Even assuming the underlying contributions were ultra vires or illegal, the decision not to pursue a derivative action regarding them was not ultra vires, illegal, or unconstitutional; thus, this decision was entitled to the protection of the business judgment rule. (*Abbey v. Control Data Corp.* (8th Cir. 1979) 603 F.2d 724, 730, cert. den. (1980) 444 U.S. 1017 [100 S.Ct. 670, 62 L.Ed.2d 647]; *Gall v. Exxon Corp.* (S.D.N.Y. 1976) 418 F.Supp. 508, 518.)

Next, plaintiffs argue the special litigation committee defense did not meet the prerequisites of Code of Civil Procedure section 597. This section permits bifurcation of a "defense not involving the merits of the plaintiff's cause of action but constituting a bar or ground of abatement to the prosecution thereof . . . ." Plaintiffs therefore argue the special litigation defense "involv[es] the merits" of their causes of action and is not a mere "bar or ground of abatement."

Code of Civil Procedure section 597, however, is not the only statute which permits bifurcation. Under Code of Civil Procedure section 1048, subdivision (b), "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial . . . *of any separate issue* . . . ." (Italics added.) ■ Moreover, the trial court's discretion to regulate the order of proof (Evid. Code, § 320) affords sufficient authority to order the separate trial of an affirmative defense. (*Donovan v. Security-First Nat. Bk.* (1945) 67 Cal.App.2d 845, 852 [155 P.2d 856], disapproved on other grounds in *Rader v. Thrasher* (1962) 57 Cal.2d 244, 251-252 [18 Cal.Rptr. 736, 368 P.2d 360]; see also *Cohn v. Bugas* (1974) 42 Cal.App.3d 381, 389, fn. 7 [116 Cal.Rptr. 810].)

Here, defendants filed their own motion for summary judgment based on the special litigation committee defense, but it was denied. Plaintiffs therefore argue the defense can be raised only by way of a pretrial motion, and, once such a motion has been denied, the defense cannot be raised again at trial. Indeed, they characterize it as a "procedural mechanism" and not really a defense at all. We know of no case holding the defense cannot be raised at trial; certainly plaintiffs cite none. *Will*, the controlling California case, reversed specifically because the plaintiff was entitled to litigate the defense at "a trial on the merits." (*Will v. Engebretson & Co., supra,* 213 Cal.App.3d at p. 1043.)

The premise of plaintiffs' argument is that the "sole purpose" of the defense "is to dispose of meritless shareholder 'strike suits' without the need for a full trial." ▮ The defense, however, has consistently been viewed as a confluence of the business judgment rule and the demand requirement. As such, its main purpose, like theirs, is to further the fundamental principle that those best suited to make decisions for a corporation—including the decision to file suit on its behalf—are its directors, not its stockholders or the courts. (See *Roberts v. Alabama Power Co.*, *supra*, 404 So.2d at p. 632; *Hirsch v. Jones Intercable, Inc.*, *supra*, 984 P.2d at p. 634; *Allied Ready Mix v. Allen*, *supra*, 994 S.W.2d at p. 8; *Auerbach v. Bennett*, *supra*, 47 N.Y.2d at pp. 630-631 [393 N.E.2d at p. 1000]; *Miller v. Bargaheiser*, *supra*, 70 Ohio App.3d at p. 706 [591 N.E.2d at p. 1342]; *Cuker v. Mikalauskas*, *supra*, 547 Pa. at pp. 606-611 [692 A.2d at pp. 1045-1048]; *Lewis v. Boyd*, *supra*, 838 S.W.2d at pp. 220-221.) To serve this purpose, the defense must be allowed whenever it is shown that a committee of disinterested directors acting in good faith has determined a derivative action is not in the best interests of the corporation—if possible, on motion, but if necessary, in a full trial.

Finally, plaintiffs argue bifurcation would complicate, rather than streamline, the proceedings. They assert that the trial on this defense will require substantial additional discovery. This is equally true, however, if the defense is tried together with all other issues. ▮ " 'It is within the discretion of the court to order a severance and separate trials . . . [citations], and the exercise of such discretion will not be interfered with on appeal except when there has been a manifest abuse thereof. [Citation.]' [Citation.]" (*Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1271 [258 Cal.Rptr. 66], quoting *McLellan v. McLellan* (1972) 23 Cal.App.3d 343, 353 [100 Cal.Rptr. 258].) We perceive no abuse of discretion. Moreover, even where the trial court has in fact abused its discretion, the petitioner is not necessarily entitled to writ relief. (*Omaha Indemnity*, *supra*, at pp. 1271-1275.) For all these reasons, we decline to issue the requested writ.

## VII*

### PLAINTIFFS' THIRD AND FIFTH CAUSES OF ACTION: VIOLATION OF CONSTITUTIONAL RIGHTS

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

---

*See footnote, *ante*, page 1152.

# VIII

## DISPOSITION

The order denying plaintiffs' motion for a preliminary injunction is affirmed.

Plaintiffs' petition for a writ of mandate is denied. Defendants shall recover costs against plaintiffs. (Cal. Rules of Court, rules 26, 56.4(a).)

Hollenhorst, Acting P. J., and Ward, J., concurred.

A petition for a rehearing was denied June 22, 2000, and the nonpublished portion of the opinion was modified. Petitioners' petition for review by the Supreme Court was denied September 13, 2000. Mosk, J., was of the opinion that the petition should be granted.